IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ROTOWORKS INTERNATIONAL LIMITED                      PLAINTIFF

v.            Civil No. 07-5009

GRASSWORKS USA, LLC;
GRASSWORKS!!! L.L.C.;
ROBERT D. UMBERSON a/k/a/BOBBY
UMBERSON; LINDA K. REED; and
METAL WORKS, L.L.C                                   DEFENDANTS

## O R D E R

Now on this 4th day of September, 2007, comes on for consideration **Plaintiff's Motion For Partial Summary Judgment Seeking Transfer Of The Rotowiper.com Domain Name** (document #52), and from said motion, the response thereto, and the supporting documentation, the Court finds and orders as follows:

1. Plaintiff Rotoworks International Limited ("Rotoworks") manufactures a type of farm implement known as a Rotowiper, used to wipe herbicide on cropland. In its Amended Complaint, Rotoworks alleges that defendants are liable to it for trademark infringement by counterfeiting and implied passing off, in violation of **15 U.S.C. §1114(1)**, and for trade dress and trademark infringement, in violation of **15 U.S.C. §1125(a)**.

Rotoworks also alleges that defendants' use of the website www.rotowiper.com (the "Website") to solicit customers for its knock-off products violates the Anticybersquatting Consumer Protection Act, **15 U.S.C. §1125(d)**, and seeks injunctive relief in

the form of transfer of ownership of rotowiper.com (the "Domain Name") and removal of all references to the Rotowiper product from sales literature and the website of the defendants.

The Amended Complaint prays for an extension of the preliminary injunction entered on March 5, 2007, to Metal Works, L.L.C.; for permanent injunctive relief; for damages, attorney's fees and costs; for "divestiture" of the Domain Name; for removal of all references to Rotowiper products from defendants' product literature and grassworks.net website; and for destruction of all knock-off products manufactured by defendants.

2.   The March 5, 2007, Order granting plaintiff's request for preliminary injunctive relief did not specifically address ownership of the Domain Name, but did address defendants' existing inventory of Rotowipers.  Rotoworks was given the option of repurchasing that inventory at a reduced rate.  If it elected not to repurchase, defendants were free to sell the machines, "but may not represent that they are authorized Rotowiper dealers, and may not use any Rotoworks or Rotowiper advertising materials, including Rotowiper brochures and the rotowiper.com website, to effect the sales."

The Order further prohibited defendants from "conducting any marketing activities which use the Rotowiper trademark, logo, website, or aqua trade dress."

Immediately following entry of the Order on March 5,

-2-

Rotoworks by letter requested that defendants post a notice at www.rotowiper.com, as follows:

> On March 5, 2007, the owner of www.rotowiper.com was preliminarily enjoined from operating this website by order of the United States District Court for the Western District of Arkansas, Fayetteville Division. You may visit the official ROTOWIPER website at: http://www.rotowiper.co.nz/.

By letter dated April 16, 2007, plaintiff requested that defendants "voluntarily relinquish ownership of the www.rotowiper.com domain name."

When neither of these requests was granted, on April 26, 2007, Rotoworks filed the motion now under consideration. The motion is fully briefed and ripe for decision.

3. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States, 31 F.3d 696 (8th Cir. 1994)**. Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp., 45 F.3d 262 (8th Cir. 1995)**. The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the

-3-

existence of a genuine dispute.  **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, **838 F.2d 268 (8th Cir. 1988)**.

4. Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

* Rotoworks owns an incontestable federal trademark registration for the mark ROTOWIPER.

* Defendants have no trademark rights in the ROTOWIPER brand.

* Defendant Bobby Umberson ("Umberson") registered the Domain Name under the express authority of Rotoworks' predecessor in interest.

* Rotoworks has terminated defendants' exclusive United States distributorship to sell ROTOWIPER products.

* Rotoworks requested that defendants post a message on the Website stating that the site had been shut down and linking to its New Zealand website, but defendants refused, and instead caused an error to appear when the Website is accessed.

* Rotoworks again attempted to resolve the issue surrounding the Domain Name amicably by requesting a voluntary transfer, but defendants refused to answer the request.

* Defendants advertised using the ROTOWIPER brand as recently as January, 2007, and all of defendants' advertisements include the Website address.

5. Rotoworks contends that if defendants had posted the requested notice redirecting Website traffic, that action "could have been seen as a sign of good faith in this litigation," and that defendants' posting of the error message on the Website "gives the appearance to the consuming public that the Rotowiper brand is now defunct."  It relies on **11 U.S.C. §1125(d),** which provides, in relevant part, that

> A person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark . . .; and (ii) . . . uses a domain name that . . . (III) is a trademark . . . protected by reason of section 706 of title 18, United States Code, or section 220506 of title 36, United States Code.

One of the remedies provided in **§1125(d)** is "transfer of the domain name to the owner of the mark."

6. **Section 1125(d)** sets forth a non-exclusive list of factors a court may consider in evaluating the *bona fides* of the user of a trademark as a domain name.  That list includes the following factors:

(a) Does the user own the trademark or other intellectual property rights in the domain name?

(b) Does the domain name consist of the legal name or nickname of the user?

(c)   Did the user formerly use the domain name in connection with the *bona fide* offering of goods?

(d)   Is the user making a *bona fide* noncommercial use of the mark in a site accessible under the domain name?

(e)   Does the user intend to divert customers from the mark's owner to a site accessible under the domain name that could harm the mark's goodwill, either for the purpose of commercial gain or to disparage the mark?

(f)   Did the user offer to sell the domain name without having used it or intended to use it?

(g)   Did the person supply false contact information when applying to register the domain name?

(h)   Has the user acquired multiple domain names confusingly similar to the trademarks of others?

(i)   Is the mark distinctive or famous as defined in **11 U.S.C. §1125(c)**?

These factors may be analyzed as follows, in light of the undisputed facts of this case:

(a)   Defendants do not own the trademark or have any other intellectual property rights in the Domain Name.

(b)   The Domain Name does not consist of the legal name or nickname of any defendant.

(c)   The defendants formerly used the Domain Name in connection with the *bona fide* offering of goods, but that use has

-6-

been specifically rescinded by Rotoworks, and the Court has enjoined the use of the Domain Name by defendants.

(d)  The defendants are not making a *bona fide* noncommercial use of the mark in a site accessible under the domain name.  While Umberson contends that "continued ownership of my domain registration is necessary so that I may continue to receive email addressed to me,"  the Court does not believe any reasonable juror would find such use "necessary" or *bona fide*, when the changing of e-mail addresses is such a ubiquitous phenomenon.

(e)  There is no showing that the defendants intend to divert customers from Rotoworks to a site accessible under the Domain Name that could harm Rotoworks' goodwill, but Rotoworks makes a telling argument that the error message on the Website "gives the appearance to the consuming public that the Rotowiper brand is now defunct."  This effect is tantamount to disparagement, especially given that defendants are now in direct competition with Rotoworks for the sale of weed wipers.

(f)  Defendants did not offer to sell the Domain Name without having used it or intended to use it.

(g)  Defendants did not supply false contact information when applying to register Domain Name.

(h)  There is no evidence that defendants have acquired multiple domain names confusingly similar to the trademarks of others.

(i)   The mark is not distinctive or famous as defined in **11 U.S.C. §1125(c).**

While some factors in the foregoing list -- f, g, h, and i -- weigh in favor of defendants, they are mainly factors associated with evaluating *bona fides* in cases where a person wrongfully registers for, and prevents usage of -- or misuses -- multiple domain names or domain names which would be desirable to the owners of famous marks.  See, e.g., **Coca-Cola Co. v. Purdy, 382 F.3d 774 (8th Cir. 2004).**  As to the facts of this case, those factors are essentially neutral.

When one considers the factors particularly relevant to the fact pattern herein presented -- a, b, c, d, and e -- the Court does not believe that reasonable minds could differ:  defendants have acted in bad faith in refusing to transfer the Domain Name to Rotoworks.  They have no valid reason to retain the Domain Name, have lost the right to use it for any commercial purpose, and have no genuine need to use it for any noncommercial purpose.

For all the foregoing reasons, the Court finds that Rotoworks is entitled to summary judgment on the issue of transfer of the Domain Name, and that defendants should be directed to effect the transfer of the Domain Name immediately.

7.   Umberson's Declaration raises a serious concern on the part of the Court that the defendants are violating the March 5, 2007, Order.  Umberson declares -- under penalty of perjury --

-8-

that "continued ownership of my domain registration is necessary so that I may continue to receive email addressed to me," and that "[s]ome of this email is of a personal nature and is unrelated to the sale of weed wipers."

If only *some* of Umberson's e-mail is personal and unrelated to the sale of weed wipers, the necessary inference is that some of it *is* related to the sale of weed wipers, and that use was specifically enjoined in the Court's March 5, 2007, Order. Defendants were prohibited from using "any Rotoworks or Rotowiper advertising materials, including Rotowiper brochures and the rotowiper.com website, to effect the sales" of their existing inventory of Rotowipers.  They were further prohibited from "conducting any marketing activities which use the Rotowiper . . . website . . . ."

This inference is reinforced by some of the documents attached to other motions in this case.  The Court notes specifically that a contact on March 16, 2007, at the Website, by Richard Dubroc resulted in the sale of a weed wiper in April, 2007.  (Document #86, Exhibit BZ).

The Court will, therefore, direct that defendants show cause, within seven (7) days of the date of this Order, why they should not be held in contempt for violation of the Court's March 5, 2007, Order.

**IT IS THEREFORE ORDERED** that **Plaintiff's Motion For Partial**

**Summary Judgment Seeking Transfer Of The Rotowiper.com Domain Name**
(document #52) is **granted**, and defendants are directed to effect
a transfer of the Domain Name within seven (7) days of the date of
this Order.

**IT IS FURTHER ORDERED** that defendants show cause, within
seven (7) days of the date of this Order, why they should not be
held in contempt for violation of the Court's March 5, 2007,
Order, by continued use of the Domain Name and Website to conduct
marketing activities involving weed wipers.

**IT IS SO ORDERED.**

                        /s/ Jimm Larry Hendren
                    **JIMM LARRY HENDREN**
                    **UNITED STATES DISTRICT JUDGE**

-10-