```
        IN THE UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF ARKANSAS
                FAYETTEVILLE DIVISION
```

**ROTOWORKS INTERNATIONAL LIMITED**                                         **PLAINTIFF**

        v.               Civil No. 07-5009

**GRASSWORKS USA, LLC;**
**GRASSWORKS!!! L.L.C.;**
**ROBERT D. UMBERSON a/k/a/BOBBY**
**UMBERSON; LINDA K. REED; and**
**METAL WORKS, L.L.C**                                                      **DEFENDANTS**

### O R D E R

On the 1st day of November, 2007, the following matters came on for hearing:

*   **Plaintiff's Motion For Entry Of Judgment Or For Clarification Of Previous Orders** (document #120);

*   the Court's **Order** of September 4, 2007, requiring defendants to show cause why they should not be held in contempt for violation of the Court's March 5, 2007, Order; and

*   the Court's **Order** of October 19, 2007, requiring defendants to show cause why they should not be held in contempt for failing to comply with the Court's September 4, 2007, Order,

and from the written submissions of the parties, and the evidence and arguments adduced at the November 1, 2007 hearing, the Court finds and orders as follows:

1.  Plaintiff Rotoworks International Limited ("Rotoworks")

manufactures a type of farm implement known as a Rotowiper, used to wipe herbicide on cropland.  In its Amended Complaint, Rotoworks alleges that defendants are liable to it for trademark infringement by counterfeiting and implied passing off, in violation of **15 U.S.C. §1114(1),** and for trade dress and trademark infringement, in violation of **15 U.S.C. §1125(a).**

The Amended Complaint prays for an extension of the preliminary injunction entered on March 5, 2007, to Metal Works, L.L.C.; for permanent injunctive relief; for damages, attorney's fees and costs; for removal of all references to Rotowiper products from defendants' product literature and grassworks.net website; and for destruction of all knock-off products manufactured by defendants.  The Amended Complaint also seeks transfer of ownership of the rotowiper.com domain name (the "Domain Name") from defendants to plaintiff.

2.  On March 5, 2007, the Court entered an Order (the "March 5 Order") which, among other things, prohibited defendants from "conducting any marketing activities which use the Rotowiper trademark, logo, website, or aqua trade dress."

3.  On September 4, 2007, the Court granted plaintiff summary judgment (the "September 4 Order") as to transfer of the Domain Name, and directed defendants "to effect a transfer of the Domain Name within seven (7) days of the date of this Order."

The September 4 Order also noted the Court's concern, based

on several submissions, that the defendants were violating the March 5 Order, and directed the defendants to "show cause, within seven (7) days of the date of this Order, why they should not be held in contempt for violation of the Court's March 5, 2007, Order, by continued use of the Domain Name and Website to conduct marketing activities involving weed wipers."

    4.   On September 18, 2007, plaintiff filed its Third Motion To Compel, directed, in part, to the issue of transfer of the Domain Name, in which it asserted that "Rotoworks has received no indication that Defendants have or will comply with the Court's *Order*. Full ownership remains vested with Bobby Umberson." (Emphasis in original.)

Defendants' Response In Opposition To Plaintiff's Third Motion to Compel, filed on October 2, 2007, failed to even address this assertion, and on October 12, 2007, plaintiff filed its Motion For Entry of Judgment, one part of which sought an order directing the Internet domain name registrar Tucows, Inc., to transfer the Domain Name to plaintiff.

    5.   It was not until September 25, 2007, that defendants belatedly filed a response to the September 4 Order. In it, they asserted that

> there is no evidence that Mr. Umberson used the 'www.rotowiper.com' domain name or his email associated with it to market or sell products in violation of the Court's March 5, 2007 order. . . . Mr. Umberson simply continued to *receive* email sent in care of the domain name 'www.rotowiper.com'. Defendants had no notice that

      this would be considered a violation of this Court's order.

(Emphasis in original.)

    6. On October 19, 2007, the Court entered a show cause Order, setting the matter down for hearing on November 1, 2007, and directing the defendants to show cause why they should not be held in contempt for violating the September 4 Order and failing to transfer the Domain Name as directed.

    7. The Court's civil contempt power serves two purposes: "to effectuate compliance with the court's order or process; and to compensate individuals from harm incurred by noncompliance." **Hartman v. Lyng**, 884 F.2d 1103, 1106 (8th Cir. 1989). In addition, even if neither coercion nor restitution is appropriate under the circumstances, where civil contempt has occurred a contempt citation will stand independent of other sanctions. **Id**.

    The burden of proof on a motion for contempt citation is on the moving party, to show by clear and convincing evidence that the facts warrant such relief. **Jake's, Ltd., Inc. v. City of Coates**, 356 F.3d 896, 899 (8th Cir. 2004).

    8. Based on the submissions of the parties and the evidence adduced at the hearing, the Court finds that defendants are in civil contempt of the March 5 Order. The persuasive evidence is as follows:

      *    In spite of the clear language of the March 5 Order

prohibiting defendants from using the rotowiper.com website to conduct marketing activities, Umberson continued to receive e-mails at the address bobby@rotowiper.com. There is no evidence that he made any attempt to change this e-mail address or cease receiving e-mail at this address, and there is evidence of sales made as a result of e-mail contacts to him at this address.

*   Umberson continued to use the Rotowiper trademark and logo, by misleading statements to potential customers which gave the impression that Umberson was manufacturing Rotowipers in America rather than importing them from New Zealand.[1] The only evidence that Umberson may have attempted to clarify the distinction between his product and that of Rotoworks was Umberson's own testimony that he made such clarifications in telephone conferences with various customers. The Court finds that testimony self-serving and lacking in credibility.

9.  Although not all the e-mails to bobby@rotowiper.com posted after March 5 resulted in sales, several of them did. The following sales appear to have been made as a result of either (a) using the bobby@rotowiper.com e-mail address; (b) using statements blurring the distinction between defendant's product and that of Rotoworks, or (c) both, after the entry of the March 5 Order:

---

[1] For example, on May 14, 2007, Umberson sent an e-mail to Kirk Vanzant, stating "WE HAVE BEEN BUILDING USA BUILT UNITS FOR SEVERAL YEARS AND marketing both US built and the Rotowiper LINE." On May 30, 2007, he sent an e-mail to Johnathan Duffy, stating "We are building NOT importing any more of the New Zealand made wipers." Both statements would lead a reasonable person to believe that Umberson was marketing two types of Rotowipers, one made in New Zealand, the other made in the United States.

\*   On March 16, 2007, Richard DuBroc contacted Umberson at bobby@rotowiper.com, indicating interest in purchasing a "rotowiper." This contact resulted in a sale generating $4,150.00 in revenue.

\*   On May 29, 2007, Jonathan Duffy contacted Umberson at bobby@rotowiper.com, inquiring about "your wipers," and noting that "your website seems to be down." Umberson responded in an e-mail with "Rotowipe" in both the "subject" and "conversation" lines, that "[w]e are building NOT importing any more of the New Zealand made wipers." This contact resulted in a sale generating $3,750.00 in revenue.

If the Court could, based on clear and convincing evidence, connect these sales with loss of revenue on the part of plaintiff, an award of compensatory damages for civil contempt might well be justified and appropriate. The fact is, however, that -- at this point -- there is nothing more than speculation to show that such a connection exists. The Court did not direct defendants to transfer the Domain Name to plaintiff until September 4, 2007 -- a date well after the sales occurred. There was no evidence presented to show whether, absent transfer of the Domain Name, the purchasers' inquiries would have reached plaintiff instead of defendants and would have potentially resulted in sales for plaintiff. Thus, for purposes of determining whether compensation is due plaintiff to make it whole by reason of defendants'

contemptuous actions/inactions, the Court sees no basis to properly infer or conclude that plaintiff would have made these sales if defendants had not made them.  Absent such a basis, no compensatory damages may now be awarded.  This is not to say, however, that plaintiff may not attempt to prove up such damages at the trial of this cause.

The fact that there is no basis upon which to award damages does not detract from the Court's finding of contempt.  Because defendants had a duty to comply with the Court's March 5 Order "independently of whatever benefit such compliance would or did confer on plaintiffs, the contempt finding stands on a clear and convincing showing that defendants committed civil contempt." **Hartman**, 884 F.2d at 1106.

10.  The Court also finds that defendants are in contempt of the September 4 Order.  As of the date of the hearing -- almost two months after transfer of the Domain Name was ordered -- the transfer still had not been effected.  The Court finds this failure to transfer contemptuous, because defendants' excuses for their failure to effect the transfer are not credible:

*    Umberson testified that he took immediate action to effect the transfer as soon as he learned of the September 4 Order.  It appears, however, that this did not occur until September 26, 2007 -- over three weeks after the transfer was ordered -- when his attorney Gary Speed sent him an e-mail asking

him to take action, and called to alert him to the e-mail. That delay alone, in the absence of a justifiable explanation, is contemptuous.

* Umberson asserted that after hearing from Speed, he filled out an on-line form, and then received confirmation that the Domain Name had been "cancelled." He testified that this led him to believe he had done all that was required of him by the September 4 Order. The Court does not credit this self-serving "explanation" since the word "cancellation" obviously does not have the same meaning as the word "transfer" and there is no reasonable basis for Umberson to honestly believe otherwise.

* Umberson also gave testimony that directly contradicted the preceding scenario. He testified that Speed "probably" e-mailed him the September 4 Order shortly after it was entered and that he was either "too busy" or had "too many e-mails," and just did not read it. Given that this e-mail would have been sent, if at all, about three months before the trial of an important case in which Umberson holds a large stake, the Court does not find this testimony credible.

* In addition to the intrinsic lack of credibility in Umberson's second scenario, its context operates to further deprive it of credibility. It was given in response to a leading question by Umberson's own attorney, at a point several hours into a hearing in which Umberson had never before acknowledged

-8-

receiving the September 4 Order in a timely fashion. Additionally, if the testimony were true, it could easily be documented by a copy of the e-mail. When the Court so noted, Umberson's attorney asserted that attorney-client privilege prevented disclosure of any such e-mail. The Court rejects the assertion of attorney-client privilege as to this document, since "[v]oluntary disclosure of attorney client communications expressly waives the privilege." **U.S. v. Workman**, **138 F.3d 1261, 1263 (8th Cir. 1998)**. Accordingly, the failure to present the document is evidence that it does not exist, and that Umberson's testimony about it was untruthful.

\*   Defense counsel set forth a litany of technical hurdles said to excuse the failure to effect the transfer. The Court does not find any of these to be sufficient justification. None of the defendants, nor their counsel, took the simple, obvious, expedient step of hiring a person trained in computer technology do what was necessary to bring about the transfer. The failure to do so -- given Umberson's disavowal of computer skills -- is evidence of willful failure to comply with the Court's Order.

11. While there is no evidence to support an award of damages to plaintiff for defendants' willful disregard of the September 4 Order, the Court finds that coercive measures are called for, given the continuing failure to comply. The Court will, therefore, impose a fine on defendants of $500.00 per day

for each day after November 15, 2007, that the Domain Name has not been transferred to plaintiff. Both plaintiff and defendant are directed to file a report of the status of the Domain Name on that date.

12. To the extent that the Motion seeks any relief not consistent with that granted in this Order, the Court will deny Plaintiff's Motion For Entry Of Judgment Or For Clarification Of Previous Orders.

13. To the extent defendants can be said to have formally requested the Court to revisit the issue of travel expenses for the witness Neil Barker, the Court declines to do so, finding the amount reasonable and the award appropriate.

14. The Court finds that plaintiff is entitled to an award of reasonable attorney's fees and costs in connection with its Motion For Entry Of Judgment Or For Clarification Of Previous Orders, and will consider same upon submission by plaintiff of a statement of its costs and fees within fourteen days of the date of this Order. Defendants will have eleven days thereafter to lodge any objections to the amounts sought.

15. Finally, the Court notes that, subsequent to the hearing at which the matters being addressed were submitted and taken under advisement, counsel for both plaintiff and defendants electronically filed unsolicited papers, in apparent attempts to further address the matters already submitted. Both sides filed

letters to the Court, and plaintiff also filed an Affidavit.  None of these filings was accompanied by a certificate of service, as required by **Rule III.B.3.** of the Court's **CM/ECF Administrative Policies and Procedures Manual for Civil Filing**.  Not only did the parties fail to comply with this simple rule of procedure intended to keep all parties informed of filings and communications with the Court, but the filings themselves were presumptuous and inappropriate. Had the Court desired further presentation or comment from counsel after the hearing, it would have asked for same.  It did not.

In addition, the Court notes that while these papers superficially purport to be relevant to the issues under consideration, they actually provide little or no edification to the Court with respect to those issues.  Instead, they essentially are attempts to further the unprofessional bickering between the *attorneys*, which is a disservice both to the Court and to their respective clients.  The Court declines to consider the contents of the unsolicited papers, and has decided the issues raised at the hearing based upon the presentations at the hearing and the papers that were properly before it.

This is not the first time that personal feuding between the attorneys has disrupted the orderly progress of this case and wasted judicial resources, and the Court will have no more of such conduct.  Given the history of this case, the Court may decide to

conduct a hearing with respect to the conduct of the attorneys after the case is concluded. If and when that happens, counsel will be given full opportunity to state their grievances against each other, and the Court will devote its full attention to their conduct. It may be that, after such a hearing, it will be appropriate to refer the entire matter to the Arkansas Supreme Court on Professional Conduct for a review of the conduct of the attorneys throughout the case. In the meantime, the Court will insist that the attorneys focus their efforts and energies on the issues which affect their respective *clients,* and cease bickering among themselves.

**IT IS THEREFORE ORDERED** that **Plaintiff's Motion For Entry Of Judgment Or For Clarification Of Previous Orders** (document #120) is **granted in part and denied in part.**

The Motion is **granted** insofar as it has already resulted in a previous Order clarifying the date by which defendants were required to pay certain sanctions and travel expenses.

The Motion is also **granted** insofar as it seeks relief for defendant's failure to comply with the Court's September 4 Order requiring transfer of the Domain Name.

The Motion is **denied** in all other respects.

**IT IS FURTHER ORDERED** that defendants are guilty of civil contempt for violating the Court's March 5 Order by continuing to use the e-mail address bobby@rotowiper.com.

**IT IS FURTHER ORDERED** that defendants are guilty of civil contempt for violating the Court's September 4 Order by failing to transfer the Domain Name, and shall be fined $500.00 per day for each day this contempt continues after November 15, 2007.

**IT IS FURTHER ORDERED** that both plaintiff and defendants are to file a written report on the status of the Domain Name on November 15, 2007.

**IT IS FURTHER ORDERED** that plaintiff is entitled to an award of reasonable attorney's fees incurred in filing and prosecuting their Motion For Entry Of Judgment Or For Clarification Of Previous Orders, and may submit a statement therefor within fourteen days of the date of this Order.  Defendants will have eleven days thereafter to lodge any objections.

**IT IS SO ORDERED,** this 8th day of November, 2007.

                                             **/s/ Jimm Larry Hendren**
                                             **JIMM LARRY HENDREN**
                                             **UNITED STATES DISTRICT JUDGE**